UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
BLADIMIL ARROYO, *pro se*,

        Petitioner,

        -against-

JAMES CONWAY, Superintendent, Attica
Correctional Facility,

        Respondent.
----------------------------------------------------------------x

**MEMORANDUM & ORDER**

08-CV-03887 (DLI)

**DORA L. IRIZARRY, U.S. District Judge:**

*Pro se*[1] petitioner Bladimil Arroyo is currently serving a twenty-year-to-life prison sentence following his March 25, 2003 conviction in New York State Supreme Court, Kings County, for murder in the second degree ("murder"), New York Penal Law ("NYPL") § 125.25(3), two counts of attempted robbery in the first degree ("attempted robbery"), NYPL §§ 110.00/160.15(2), and one count of assault in the second degree ("assault"), NYPL § 120.05(6). In this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, petitioner claims that: (1) he received ineffective assistance of counsel; (2) the lineups conducted by law enforcement were impermissibly suggestive; and (3) the trial court erred in basing his sentence on crimes of which the jury acquitted him. For the reasons set forth below, the petition is denied in its entirety.

**I.    Background**

After leaving a nightclub on September 16, 2001, Chris Greene and Gabor Muranyi were approached by petitioner and Edwin Lorenzo ("codefendant"). (Trial Transcript ("Trial Tr.")

---

[1] As a pro se litigant, the court holds petitioner's pleadings to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). The court interprets the petition "to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (emphasis omitted).

1

414:14-20, 422:6-16.) Petitioner and his codefendant pointed guns at Greene and Muranyi and demanded their money and valuable possessions. (Trial Tr. 422-26.) Greene stabbed Lorenzo in defense, but Muranyi was fatally shot. (Trial Tr. 141:7-12, 432:4-10.) At the time of the shooting, N.Y.P.D. Officers Michael Monteverde and Paul Saez were standing at a nearby corner. Monteverde heard the gunshots and shortly thereafter observed codefendant's fleeing car driving along 42nd street. The rear passenger side window was down, so Montverde saw petitioner as the car passed him. (Trial Tr. 66-68.) The officers hurried into Monteverde's personal car, followed Lorenzo's car for approximately one-half of a city block, and observed the assailants get out of the parked car and run into a brownstone. (Trial Tr. 72:19-25, 74:11-14, 75:22, 100:17-20.) As the officers were searching the brownstones for the assailants, Lorenzo, who was bleeding from his stab wound, left one of the brownstones, re-entered his car, and sped away. (Trial Tr. 76:16, 77:2-4.) The officers attempted to give chase, but lost sight of the car and returned to the area where Lorenzo had parked his car earlier. Upon arrival, the officers noticed a trail of blood leading from the curb (where Lorenzo's car had been parked) up to petitioner's apartment building at 455 42nd Street. (Trial Tr. 78:10-15.) Once backup arrived, officers followed the blood trail to petitioner's apartment, entered and arrested him. (Trial Tr. 81.)

At the police station, petitioner was given his *Miranda* warnings, and he subsequently signed a *Miranda* waiver form. (Trial Tr. 249:21-25.) Later that day, petitioner made three statements and participated in two lineups. (Trial Tr. 51, 91, 326, 363.) Petitioner's first statement, made at 7:00 a.m., put him at the scene of the crime, but did not inculpate him in the robbery or murder. (Trial Tr. 253, 255.) Between 8:00 a.m. and 12:00 p.m., the police were told that Muranyi had been shot and stabbed. (Trial Tr., 271:20-23, 377:16-22.) At approximately

12:45 p.m., the interviewing officer, Detective Keating, walked into petitioner's holding cell, told petitioner that he wanted to speak with him about inconsistencies in his story, and informed him that someone had been shot and stabbed. Petitioner then admitted to stabbing the murder victim but denied shooting him. (Huntley Hr'g Tr. 14:19-25, 30:9-20, 31:10-15; Trial Tr. 267-72, 275:13-14, 319.) Between 2:50 and 3:00 p.m., Officer Monteverde and Greene separately viewed the lineups. (Wade Hr'g Tr. 28-29.) Monteverde identified petitioner; Greene did not. (Wade Hr'g Tr. 28:23-24, 29:17.) At 3:17 p.m., petitioner made his videotaped third statement, which is consistent with his second statement and shows petitioner acknowledging and waiving his *Miranda* rights. (Trial Tr. 515:1-6, 540:10-11.) An autopsy later revealed that the murder victim had suffered a gunshot wound and not a stab wound. (Trial Tr. 391:9-10.)

A *Wade*[2] hearing to assess the suggestiveness of the lineups was held on March 22, 2002. After hearing testimony regarding the manner in which the lineups were conducted, the trial court denied petitioner's request to have the lineup identification suppressed as suggestive. (Wade Hr'g Tr. 51:16-21.) The trial court also held a *Huntley*[3] hearing to assess the voluntariness of petitioner's statements on April 18, 2002. At the *Huntley* hearing, defense counsel elicited testimony from the interviewing detective regarding the voluntariness of petitioner's statements, including any substantive conversations the detective had with petitioner and petitioner's treatment while being held. (Huntley Hr'g Tr. 18-35.) In addition, counsel also called petitioner's mother to testify as to the circumstances of petitioner's arrest at his home. (Huntley Hr'g Tr. 46-52, 65-67 72:9-11.) At the conclusion of the hearing, counsel only moved to suppress petitioner's statements based on an alleged *Payton*[4] violation, *i.e.*, the legality of

---

[2] *U.S. v. Wade*, 388 U.S. 218 (1967).
[3] *People v. Huntley*, 15 N.Y.2d 72 (1965).
[4] *Payton v. New York*, 445 U.S. 573 (1980).

petitioner's arrest, and decided to forego the *Huntley* challenge. (Huntley Hr'g Tr. 72:19-24.) Although the court noted that the *Payton* issue should have been raised before the start of the *Huntley* hearing, the court nevertheless addressed the merits of the alleged *Payton* violation, finding the mother's testimony incredible and denying the motion to suppress the statements on that basis. (Huntley Hr'g Tr. 71:1-17; 77-78.)

The trial against petitioner commenced on November 13, 2002. On November 25, 2002, the jury convicted petitioner of murder, two counts of attempted robbery, and assault. (Trial Tr. at 754: 16-25.) On March 25, 2003, the trial court sentenced petitioner to twenty-years-to-life in prison. (Sentencing Hr'g Tr. 7:9-10.) Petitioner appealed his conviction to the New York State Supreme Court, Appellate Division, Second Department ("Appellate Division"), arguing that: (1) he was denied effective assistance of counsel because his attorney failed to move for the suppression of his statements on *Huntley* grounds; (2) the lineups conducted by law enforcement were impermissibly suggestive because his clothing, skin tone, hairline and facial hair made him stand out; and (3) the court improperly sentenced petitioner based on crimes of which the jury acquitted him.

The Appellate Division affirmed the conviction. *People v. Arroyo*, 38 A.D.3d 792 (2d Dep't 2007). The court held that defense counsel's failure to challenge the voluntariness of petitioner's statements to the police did not constitute ineffective assistance of counsel, and that any error was not prejudicial due to the "overwhelming evidence" of petitioner's guilt. *Id.* at 792-793. The court further held that the trial court properly declined to suppress the lineup identification evidence because any minor differences in clothing and skin tone were "insufficient to render the lineup unduly suggestive." *Id.* at 793. Lastly, the court held that petitioner's claim that the sentencing court "improperly imposed a sentence based on crimes of

4

which he was acquitted [was] unpreserved for appellate review . . . [and in] any event, this contention [was] without merit." *Id.* (internal citations omitted).

On June 6, 2007, the New York State Court of Appeals denied petitioner's application for leave to appeal. *People v. Arroyo*, 9 N.Y.3d 839 (2007). Petitioner did not request a writ of certiorari from the United States Supreme Court, and his conviction became final at the expiration of the 90-day period for seeking certiorari. *See* 28 U.S.C. § 2244(d)(1)(A) (2010); *see also Williams v. Artuz*, 237 F.3d 147, 151 (2d Cir. 2001). He timely filed this petition for a writ of habeas corpus on September 15, 2008.

## II. Discussion

### a. Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), federal courts may grant habeas relief only if the state court's adjudication on the merits:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A decision is "contrary to" federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000) (O'Connor, J., concurring and writing for the majority). An "unreasonable determination" is one in which "the state court identifie[d] the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applie[d] that principle to the facts of the prisoner's case." *Id.* at 413.

A federal court may not grant relief "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, the state court's application must have been "objectively unreasonable." *Id.* at 409. "[A] determination of a factual issue made by a State court shall be presumed to be correct," and "[t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

"A district court must dismiss any petition for habeas corpus, brought pursuant to 28 U.S.C. § 2254, that contains issues not exhausted in the state courts." *McKethan v. Mantello*, 292 F.3d 119, 122 (2d Cir. 2002). A claim is considered exhausted when a state court prisoner presented to the state court "both the factual and legal premises of the claim he asserts in federal court." *Daye v. Attorney General*, 696 F.2d 186, 191 (2d Cir. 1982) (*en banc*). Because petitioner advanced the same claims to the state courts, his claims are deemed exhausted. *See* 28 U.S.C. § 2254(c) (2010).

### b. Ineffective Assistance of Counsel

Under the Sixth Amendment, criminal defendants "shall enjoy the right . . . to have the Assistance of Counsel for [their] defense." U.S. CONST. amend. VI. "[T]he right to counsel is the right to the effective assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970). *Strickland v. Washington* sets forth the standard for ineffective assistance of counsel. 466 U.S. 668, 687 (1984). To prevail under *Strickland*, a petitioner must show that (1) his counsel's representation "fell below an objective standard of reasonableness" measured by "prevailing professional norms," *id.* at 688, and that (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694. Counsel is "strongly presumed to have rendered adequate assistance and made all

significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. Generally, "strategic choices made by counsel after a thorough investigation of the facts and law are 'virtually unchallengeable,' though strategic choices 'made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.'" *Thomas v. Kuhlman*, 255 F. Supp. 2d 99, 107 (E.D.N.Y. 2003) (quoting *Strickland*, 466 U.S. at 690-91).

Petitioner contends that he was denied effective assistance of counsel because his attorney moved to suppress his statements on *Payton* grounds (which petitioner argues was procedurally barred[5]), but not *Huntley* grounds, thereby "permitting the strongest proof" of guilt to be introduced at trial against him. (Petition ("Pet.") at 3.) Petitioner further argues that counsel was ineffective by failing to move to reopen the *Huntley* hearing after the interrogating officer made statements at trial that were inconsistent with his testimony at the hearing. As discussed in more detail below, neither argument is persuasive.

Regarding the first prong of *Strickland*, counsel fully explored the voluntariness of petitioner's statements throughout the *Huntley* hearing and, based on the testimony elicited from Detective Keating and Assistant District Attorney Timothy Gough, made a reasonable decision not to move for preclusion on that basis. (Huntley Hr'g Tr. 16-35, 41-43.) Petitioner cannot erase the fact that he acknowledged and signed two *Miranda* waivers, signed the written version of his oral statements, and made a voluntary videotaped confession to Gough. (Huntley Hr'g Tr. 7:19-23, 8:1-5, 10:19-20, 17:13-15, 18:2-3, 37:12-17.) Accordingly, it was not unreasonable for counsel to forego moving to suppress on the basis of a *Huntley* violation. *See Francis v. Conway*,

---

[5] This claim is belied by the record. Although the trial court noted that defense counsel should have earlier moved to expand the *Huntley* hearing to a *Payton* hearing, the record reflects that the trial court nonetheless considered and rejected the claim on the merits. (Huntley Hr'g Tr. 78:9-18.)

2010 WL 23327, *13 (E.D.N.Y. Jan. 5, 2010) ("*Strickland* does not require trial counsel to engage in an exercise in futility.").

Regarding the failure of counsel to reopen the *Huntley* hearing, the court similarly finds counsel's conduct reasonable. At trial, Detective Keating testified that he told petitioner that someone had been stabbed and shot prior to the making of petitioner's second statement. (Trial Tr. 319:7-12.) Although this conduct is not improper, this version of events is arguably inconsistent with Keating's testimony at the *Huntley* hearing. (*Compare* Hunley Hr'g Tr. 28-32, *with* Trial Tr. 319:7-12.) This inconsistency, however, without more, does not suggest that petitioner's statements were somehow coerced or scripted or that Keating's entire hearing testimony was incredible. At the *Huntley* hearing, counsel probed whether there was any coercion *ad nauseum*. At the conclusion of the *Huntley* hearing, the trial court found Keating's testimony to be credible and that the statements were voluntarily given. (Huntley Hr'g Tr. 75:22-25, 76:6-7.) Based on this arguable inconsistency alone, the court sees no reasonable likelihood that the hearing would have been reopened, and an even smaller likelihood that the statements would have been suppressed at the conclusion of the hearing. *See Linares v. Greiner*, 120 F. App'x. 852, 856 (2d Cir. 2005) (finding no ineffective assistance of counsel when "little likelihood" of reopening of *Huntley* hearing during trial). Accordingly, failing to move for a re-opening of the *Huntley* hearing did not violate *Strickland*'s first prong.

Even assuming *arguendo* that counsel had acted unreasonably, and further assuming the statements had been suppressed, no prejudice resulted since there was overwhelming evidence of petitioner's guilt. Officer Monteverde testified that he and Officer Saez were standing on the corner of 42nd Street and Fourth Avenue when the shooting occurred. (Trial Tr. 65-66.) Monteverde heard approximately six shots fired, the screeching of automobile tires, and shortly

thereafter saw Lorenzo's car speed past him. (Trial Tr. at 67.) As the car passed the officers, Monteverde saw the petitioner in the back of the car because the rear passenger side window was down. (Trial Tr. 71.) The officers then got into Monteverde's car, which was parked approximately twenty-three feet away, and followed Lorenzo's car one-half of a city block to the middle of 42nd Street between Fourth and Fifth Avenues, where the car was parked. (Trial Tr. 71, 99.) Because Lorenzo was bleeding heavily from the stab wounds inflicted by Greene, bloodstains marked his route from the parked car right into defendant's apartment, where petitioner, who was wearing the same clothes Monteverde had seen him in earlier, was found by Monteverde and placed under arrest. (Trial Tr. 78-79.) Monteverde later identified petitioner in a lineup, and also identified petitioner at trial. (Wade Hr'g Tr. 28:23-24; Trial Tr. 92.) Thus, based on the overwhelming evidence of defendant's presence and participation in the attempted robberies and murder, it is highly unlikely that the jury would have acquitted petitioner if the defendant's statements had been suppressed. By failing to meet the prejudice component, petitioner fails to prove that the Appellate Division's rejection of defendant's ineffective assistance claim was "contrary to, or involved an unreasonable application of, clearly established Federal law." 28 U.S.C. § 2254(d)(1) (2010). Accordingly, this claim does not warrant habeas relief.

### c. Impermissibly Suggestive Lineups

Petitioner claims the admission of Officer Monteverde's lineup identification into evidence violated his due process rights because the lineup was impermissibly suggestive. (Pet. at 3.) In the Second Circuit, identification evidence is properly admitted if "(1) the procedures were not suggestive or (b) the identification has independent reliability." *Raheem v. Kelly*, 257 F.3d 122, 133 (2d Cir. 2001) (internal citations omitted).

A lineup is unduly suggestive as to the defendant if "he meets the description of the perpetrator *previously given* by the witness and the other lineup participants obviously do not." *Id.* at 134 (emphasis added). Thus, the focus of the "inquiry is not whether the suspect has a distinctive feature not shared by the other participants, but whether that feature matches the description provided by the witness." *West v. Greiner*, 2004 WL 315247, at *5 (E.D.N.Y. 2004) (citing cases). If the lineup is unduly suggestive, the court may still allow the introduction of such evidence if, based on the totality of the circumstances, it is independently reliable based on the five factors set out by the United States Supreme Court in *Neil v. Biggers*, including: "(1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and the confrontation. *Raheem*, 257 F.3d at 135 (citing *Neil*, 409 U.S. 188, 199-200 (1972)); *accord Manson v. Brathwaite*, 432 U.S. 98, 114 (1977).

### i. Suggestiveness of the Procedure

Petitioner argues that the lineup was unduly suggestive because: (1) he was the only person in the lineup wearing light-colored clothing; (2) only one lineup filler was light-skinned, and that man had a hairline that was readily distinguishable; and (3) he was the only person in the lineup that had facial hair solely on his chin. (Pet. at 3.)

As an initial matter, there is no evidence that, prior to the lineup identification, Monteverde described petitioner on the basis of his clothing color, skin color, hairline or facial hair. *West*, 2004 WL 315247, at *5 (the focus of the "inquiry is not whether the suspect has a distinctive feature not shared by the other participants, but whether that feature matches the description provided by the witness"). Moreover, while lineup participants should share the

same general physical characteristics, "[t]here is no requirement that a suspect in a lineup be surrounded by people identical in appearance." *Tavarez v. LeFevre*, 649 F. Supp. 526, 530 (S.D.N.Y. 1986). The five fillers all appeared to be young males similar in height, weight, age, hairstyle, and hair color to that of petitioner. (Docket Entry 12.) Although petitioner was the only one with *both* a light-colored shirt and light-colored pants, any suggestiveness is undercut by Monteverde's testimony *at trial* that defendant was wearing dark clothing at the time of the incident. (Trial Tr. 75:10.) This suggests that Monteverde's attention would have been drawn away from petitioner's light-colored clothing. Regarding skin tone, petitioner was not the only one in the lineup with a light complexion. (Docket Entry 12.) In fact, one filler was lighter-skinned than petitioner and, while the other four fillers were darker-skinned than petitioner, at least three had fairly light-colored skin. (*Id.*; Wade Hr'g Tr. 51:11-15.) Such a difference in skin tone is generally permissible. *See United States v. Wilson*, 493 F. Supp. 2d 469, 472, 473 (E.D.N.Y. 2006) (lineup in which all fillers had darker skin tone held admissible); *Roldan v. Artuz*, 78 F. Supp. 2d 260, 272-75 (S.D.N.Y. 2000) (lineup in which defendant was taller, lighter in complexion, heavier in weight, younger and had a different hair style than fillers, held admissible); *but see United States v. Fernandez*, 456 F.2d 638, 642 n.2 (2d Cir. 1972) (lineup in which defendant was the *only* light-skinned male unduly suggestive). Petitioner's arguments regarding the differences in hairline and facial hair are also insufficient to render the lineup unduly suggestive. *See, e.g.*, *United States v. Jackson*, 509 F.2d 499, 505 (D.C. Cir. 1974) ("[defendant's] bush hairstyle was not 'so unnecessarily suggestive and conducive to irreparable mistaken identification' as to amount to a constitutional violation," even though "some [fillers] had facial hair, and some did not, and fillers haircuts diverged considerably"); *Collins v. Scully*, 878 F. Supp. 452, 457 n.8 (E.D.N.Y. 1995) (lineup did not violate due process although

defendant was the only one with corn-row hair). Finally, and of no small moment, it must be remembered that Greene failed to identify petitioner in the lineup he viewed. (Trial Tr. 29:17.) Considering the totality of the circumstances, the court finds that the lineup was not unduly suggestive.

### ii. Independent Reliability

Even if the lineup was unduly suggestive, after considering the *Neil v. Biggers* factors, the court finds that the identification had independent reliability. Monteverde viewed petitioner three times around the time of the incident: first, as petitioner passed Monteverde in Lorenzo's car; again as petitioner exited the car and proceeded up the steps of, and into the building at, 455 42nd street; and, finally when Monteverde arrested petitioner inside his apartment. (Trial Tr. 71-75; 79-80.) Moreover, at the lineup (which was conducted approximately twelve hours after the incident), and again at trial, Monteverde apparently identified petitioner without hesitation. (Wade Hr'g Tr. 28-29; Trial Tr. 91-2.) Considering all of these factors, Monteverde's identification was independently reliable.

### d. Sentencing Error

Petitioner's final claim is that the trial court improperly based its sentence on crimes, specifically, criminal weapon possession, of which the jury had acquitted him. (Pet. 4.) However, the Appellate Division ruled that the petitioner failed to preserve this issue for appellate review because he failed to comply with N.Y. CRIM. PROC. LAW ("CPL") § 470.05(2). *See Arroyo*, 38 A.D.3d at 792. The Appellate Division's invocation of this procedural default constitutes an independent and adequate state ground of decision, notwithstanding the fact that the court addressed the merits of the claim in an alternative holding. *See Brown v. People*, 2006 WL 3085704, at *4 (E.D.N.Y. Oct. 30, 2006). Petitioner has neither alleged cause for the default

or actual prejudice from the violation, nor demonstrated that failure to consider the claim would result in a fundamental miscarriage of justice. *See id.* at *4-5; *Coleman v. Thompson*, 501 U.S. 722, 750 (1991) ("In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."). Accordingly, petitioner's claim is procedurally barred from federal habeas review.

### III. Conclusion

For the foregoing reasons, Arroyo's petition for a writ of habeas corpus is denied. Petitioner is further denied a certificate of appealability as petitioner failed to make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); FED. R. APP. P. 22(b); *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *Luciadore v. New York State Div. of Parole*, 209 F.3d 107, 112 (2d Cir. 2000). The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and, therefore, *in forma pauperis* status is denied for purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

DATED: Brooklyn, New York
       October 7, 2010

                                        /s/
                                 DORA L. IRIZARRY
                              United States District Judge